United States District Court
For the Southern District of Florida

Vingianza Aybar,

    Plaintiff,                                      Civil Action No.

vs.

Select Portfolio Servicing, Inc.,

    Defendant.

_____/

**Complaint and Demand for Jury Trial**

Plaintiff, Vingianza Aybar, sues Defendant, Select Portfolio Servicing, Inc. ("SPS"), for monetary relief, including attorney fees and costs, and respectfully demands judgment against the Defendant on all claims pled against it in this complaint. Plaintiff brings this action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and its implementing regulation, Regulation X, 12 C.F.R § 1024 ("Regulation X"), for multiple violations of the RESPA. The ultimate facts supporting Plaintiff's entitlement to the requested relief are articulated in the numbered paragraphs below.

Jurisdiction, Venue, and Parties

1. This Court has subject matter jurisdiction over Plaintiff's claim under the RESPA and Regulation X pursuant to 12 U.S.C. § 2614.

2. Venue is proper in the United States District Court for the Southern District of Florida under 12 U.S.C. § 2614 because it is the district in which the property involved is located.

3. Plaintiff is Florida resident residing in Broward County, Florida.

4.     Defendant, SPS, is a corporation with its principal place of business in Salt Lake City, Utah. At all times material to this action, Defendant regularly transacted business in the state of Florida.

Introduction

5.     In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), Public Law No. 111-203, 124 Stat. 1376 (2010).

6.     Specifically, on July 10, 2013, the CFPB issued mortgage rules under Regulation Z and Regulation X pursuant to its authority under the DFA, which became effective on January 10, 2014.

7.     Defendant is a loan "servicer" of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2) (the "Loan"). Defendant receives payments from consumers and is responsible for distributing those payments to the investors who own the consumers' loans and, when the consumers' loans include escrow accounts, to the consumers' taxing authorities or insurance companies. Thus, it is a servicer within the meaning of RESPA. 12 C.F.R. § 1025.2(b). Thus, the Defendant is subject to the servicing requirements provided for in the RESPA and Regulation X.

8.     RESPA and Regulation X are applicable to all "federally related mortgage loans", which include any loans secured by a first or subordinate lien on residential real property upon which a one-to-four family structure is located and which is made in whole or in part by any lender that is either regulated by or whose deposits or accounts are insured by an agency of the Federal

Government. *See* 12 C.F.R. § 1024.2. Accordingly, Plaintiff's Mortgage is a "federally related mortgage loan" as defined in Regulation X. *Id.*

9. Plaintiff is asserting a claim for relief against Defendant for breaches of the specific rules under Regulation X as set forth below.

10. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, attorneys' fees and costs.

<u>Factual Allegations</u>

11. On or about October 4, 2006, Plaintiff executed a promissory note and mortgage in favor of Countrywide Bank, N.A. (the "Loan") for the purchase of the property located at 4314 Mahogany Ridge Drive, Weston, FL 33331 (the "Property").

12. On September 19, 2008, Defendant, on behalf of non-party "The Bank of New York as Trustee for the Certificate holders CWALT, Inc. Alternative Loan Trust 2006-OA19, Mortgage Pass-Through Certificates, Series 2006-OA19" (hereinafter, "BONY"), initiated foreclosure proceedings the Plaintiff Broward County Circuit Court Case styled "*The Bank of New York as Trustee for the Certificate holders CWALT, Inc. Alternative Loan Trust 2006-OA19, Mortgage Pass-Through Certificates, Series 2006-OA19 v. Vinginaza Aybar, et al.*, which was assigned Case Number CACE 09-04157 (21) (the "Foreclosure Action").

13. On or before February 21, 2014, Defendant received the Plaintiff's February 17, 2014 "hardship letter" which was her initial request for mortgage assistance (hereinafter the "Application").

14. Shortly thereafter, on February 24, 2014, sent a general letter to the Plaintiff outlining the modification process. Notably, the February 24, 2014 letter does not acknowledge

receipt of a loss mitigation application and does not contain a determination as to whether the application is either complete or incomplete. A copy of the February 24, 2014 is attached as Exhibit "A".

15. On March 10, 2014, Defendant sent a letter oddly stating that it had "previously offered" the Plaintiff a "Trial Period Plan" and that the Plaintiff "[did] not qualify for HAMP" - because she allegedly failed to respond to certain "notices" that were allegedly sent to her "more than 30 days ago". Notably, the March 10, 2014 letter does not indicate that any additional documents or information was needed in order to complete the Application. A copy of the March 10, 2014 letter is attached as Exhibit "B"

16. On or about March 27, 2014, Defendant responded to the Application with a letter entitled "Required Information Notice". The March 27, 2014 letter stated that the Application was determined "incomplete" and that SPS must receive the "missing Required Documents" on or before May 11, 2014. A copy of the March 27, 2014 letter is attached as Exhibit "C".

17. On March 28, 2014, Plaintiff provided to the Defendant the documents requested in the March 27, 2014 letter. A copy of the email providing the requested documentation is attached as Exhibit "D".

18. On or about April 29, 2014, Plaintiff received a letter from Defendant's attorney which requested that the Plaintiff provide yet "one more" bank statement that showed her husband's contribution. Plaintiff responded to Defendant's request the next day on April 30, 2014, by providing the requested bank statement. A copy of the April 29th letter and response is attached as Composite Exhibit "E".

19. On or about June 18, 2014, Defendant sent to Plaintiff a letter confirming that it had received a **"complete"** loss mitigation Application including all of the documents and/or

information required to "evaluate" Plaintiff's account for loss mitigation assistance. The complete application notification also advised that Defendant would "evaluate [Plaintiff's] complete application for all loss mitigation options available to [her]" and that "the results would be sent to [Plaintiff] within "thirty (30) days" of the date of June 18, 2014 complete application letter, i.e. July 18, 2014. More importantly, the June 18, 2014 letter assured the Plaintiff (in BOLD print) that **"NO FORECLOSURE SALE WILL BE CONDUCTED AND THAT [PLAINTIFF] WOULD NOT LOSE [HER] HOME during the evaluation"** of Plaintiff's complete loss mitigation application. The June 18, 2014 complete application notification letter also assured the Plaintiff that even if "a foreclosure sale has already been scheduled", that it would then "instruct its attorney to file a motion to postpone such sale". However, Defendant's attorney did the opposite of filing a motion to "postpone" the sale and filed a motion for an order of sale instead. A copy of the June 18, 2014 letter is attached as Exhibit "F"

20.     Notably however, even after its June 18, 2014 letter confirming receipt of all the documents and/or information it needed to evaluate the Application, Defendant, between June 23, 2014 and up until the January 13, 2015 foreclosure sale date, still chose to send a campaign of automated letters. Oddly, the automated form letters were requesting the very same documents and/or information that SPS had already confirmed receiving on June 18, 2014. Samples of the automated letters dated June 23, 2014, September 4, 2014, October 24, 2014, and two letters dated December 8, 2014, are attached as Composite Exhibit "G".

21.     The strangest of these letters sent by the Defendant, all of which were sent after the Defendant had already confirmed receipt of all necessary information and documents, is a letter which the Defendant sent on or about September 4, 2014. In its September 4, 2014 letter, SPS boldly states that it, **"SPS did not receive the required documents within the timeline**

**specified"**.  As such, it **(SPS), "did not evaluate my account for loss mitigation"** and have therefore, **"closed my request for review".**  It is important to note however, that even though SPS' September 4, 2014 letter offered the Plaintiff an opportunity to "appeal" it's so called "non-approval", the letter is not an actual "denial" letter as contemplated by 12 C.F.R. 1024.41(h) of Regulation X. A copy of the September 4, 2014 letter is attached as Exhibit "H".

22. Despite its June 18, 2014 letter which confirmed receipt of the Plaintiff's complete loss mitigation application, Defendant, on July 2, 2014, moved for an "order of sale" in the Foreclosure Action. A copy of the Motion to Reschedule Foreclosure Sale is attached as Exhibit "I".

23. On August 7, 2014, the Defendant obtained an "order of sale" scheduling the foreclosure sale of the Plaintiff's Property on October 8, 2014. A copy of the August 7, 2014 order is attached as Exhibit "J".

24. On or about October 5, 2014, and as a direct result of Defendant's August 7, 2014 actions in obtaining an order of sale, Plaintiff retained the services of an attorney for the filing of a motion to cancel the October 8, 2014 foreclosure sale in the Foreclosure Action. A copy of the October 5, 2014 motion to cancel sale is attached as Exhibit "K".

25. On October 7, 2014, an order was entered cancelling the October 8, 2014 sale, but yet rescheduling a new sale date for January 13, 2015.  A copy of the October 7, 2014 Order is attached as Exhibit "L".

26. On December 17, 2014, the Defendant moved for a second time towards an order of sale by causing the Broward County Clerk of Courts to issue a notice of sale for the foreclosure sale scheduled on January 13, 2015. A copy of the Notice of Sale is attached as Exhibit "M".

27. Thereafter, on or about December 22, 2014, Defendant, SPS, who was still evaluating the Application moved to cancel the January 13, 2015 foreclosure sale and scheduled that motion to be heard on January 12, 2014. A copy of Defendant's December 22, 2014 motion to cancel sale is attached as Exhibit "N".

28. However, on January 12, 2015, Defendant's facially insufficient and half-hearted December 22, 2014 motion to cancel sale was denied. A copy of the January 12, 2015 Order denying Defendant's motion to cancel sale is attached as Exhibit "O".

29. On January 23, 2015, and as a result of Defendant's decision to improperly reschedule a foreclosure sale and its failure to then have that sale canceled, Plaintiff was forced to retain the services of an attorney for the filing of an Objection to Foreclosure Sale. A copy of the Objection to Foreclosure Sale is attached as Exhibit "P".

30. On April 13, 2015, rather than assisting the Plaintiff in reversing a sale that the Defendant itself had requested be cancelled, Defendant filed a Motion to Strike the Plaintiff's Objection requesting that the Objection be stricken. A copy of the April 13, 2015 Motion to Strike is attached as Exhibit "Q".

31. On June 12, 2015, an order was entered denying the Plaintiff's Objection to Foreclosure Sale. A copy of the order denying the Plaintiff's Objection is attached as Exhibit "R".

32. On October 6, 2015, the Broward County Clerk of Courts issued a certificate of title for the Plaintiff's property in favor of the Defendant. A copy of the certificate of title is attached as Exhibit "S".

**Count I – Failure to Timely Acknowledge Loss Mitigation Application
Violation of Regulation X, Section 12 C.F.R. § 1024.41(b)(2)(i)(B)**

33. Plaintiff incorporates the allegations in paragraphs 1-32 above into this count for damages.

34. Section 1024.41(b)(2)(i)(B) provides that a servicer shall:

"(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options."

35. Plaintiff submitted a loss mitigation application to the Defendant on February 17, 2014, which the Defendant received on February 21, 2014.

36. Defendant did not properly and timely acknowledge the Plaintiff's loss mitigation application pursuant to § 1024.41(b)(2)(i)(B) until March 27, 2014. See Exhibit "C".

37. Defendant's March 27, 2014 acknowledgement letter was not sent within 5 days of its receipt of the loss mitigation application and therefore Defendant is in violation of § 1024.41(b)(2)(i)(B).

38. As a result of Defendant's violation, Plaintiff incurred actual damages in the form of (1) extra costs and fees assessed to the Plaintiff's mortgage loan account balance due to the Defendant's failure to comply with Regulation X; (2) lost wages resulting from missed work or employment in connection with Plaintiff's efforts to bring Defendant in compliance with Regulation X; and (3) emotional distress, humiliation, embarrassment, aggravation, and severe anxiety caused by Defendant's blatant and willful violation of Regulation X. Further, Plaintiff

alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b). Accordingly, Plaintiff is entitled to its actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**Count II – Failure to Timely Evaluate Loss Mitigation Application
<u>Violation of Regulation X, Section 12 C.F.R. § 1024.41(c)(1)</u>**

39. Plaintiff incorporates the allegations in paragraphs 1-32 above into this count for damages.

40. Section 1024.41(c)(1) of Regulation X provides that

"If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:

(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

41. Defendant acknowledged receipt of Plaintiff's complete loss mitigation on June 18, 2014. See Exhibit "F". Thereafter, certain additional documentation was requested from the Plaintiff in order to complete the application, all of which were subsequently and immediately provided to the Defendant. See Exhibit "G".

42. However, Defendant ultimately failed to ever evaluate the Plaintiff's loss mitigation application and on October 6, 2015, Plaintiff lost title to her home when a certificate of issued in favor of Defendant. See Exhibit "S".

43. Defendant failed to evaluate the Plaintiff's complete loss mitigation application within 30 days of its receipt and is therefore in violation of § 1024.41(c)(1).

44. As a result of Defendant's violation, Plaintiff incurred actual damages in the form of (1) the loss of her homestead property; (2) extra costs and fees assessed to the Plaintiff's mortgage loan account balance due to the Defendant's failure to comply with Regulation X; (3) lost wages resulting from missed work or employment in connection with Plaintiff's efforts to bring Defendant in compliance with Regulation X; and (4) emotional distress, humiliation, embarrassment, aggravation, and severe anxiety caused by Defendant's blatant and willful violation of Regulation X which has resulted in the loss of her home. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b). Accordingly, Plaintiff is entitled to its actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**Count III – Failure to Properly Prohibit Foreclosure Sale**
**Violation of Regulation X, Section 12 C.F.R. § 1024.41(g)**

45. Plaintiff incorporates the allegations paragraphs 1-32 above into this count for damages.

46. Section 1024.41(g) of Regulation X provides that

"If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale…." 12 C.F.R. § 1024.41(g).

47. Further, § 1024.41(c)(2)(iv) provides that

"If a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1026.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application." 12 C.F.R. § 1024.41(c)(2)(iv)

48. On June 18, 2014, the Defendant acknowledged receipt of the Plaintiff's complete loss mitigation application, therefore prohibiting it from moving for foreclosure judgment or order of sale, and from conducting a foreclosure sale. *See* 12 C.F.R. § 1024.41(g). See Exhibit "F".

49. On June 23, 2014, the Defendant sent to the Plaintiff a letter requesting additional documentation from the Plaintiff, which were immediately provided, in order to process her application. The letter allowed the Plaintiff until July 23, 2014 to provide the requested documentation. See Exhibit "G".

50. However, on July 2, 2014, the Defendant elected to file a motion to reschedule foreclosure sale in direct violation of § 1024.41(g) and obtained an order scheduling a foreclosure sale of the Plaintiff's property for October 8, 2014. See Exhibits "I" and "J".

51. Defendant was prohibited from pursuing a foreclosure sale notwithstanding its June 23rd letter requesting additional documentation, because § 1024.41(c)(2)(iv) states that "[i]f the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of

paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

52. Therefore, Defendant's decision to file the Motion to Reset Foreclosure Sale Date after having acknowledged receipt of a complete loss mitigation application, and before the date it allowed the Plaintiff to provide the documents, constitutes a violation of 12 C.F.R. § 1024.41(c)(2)(iv) and § 1024.41(g).

53. As a result, Plaintiff incurred actual damages in the form of (1) legal fees incurred reviewing the Defendant's Motion to Reset Foreclosure Sale, drafting a motion to cancel sale foreclosure sale, and attending the hearing on Plaintiff's motion; (2) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X; (3) the loss of her homestead property; and (4) emotional distress, humiliation, embarrassment, aggravation, and severe anxiety caused by Defendant's blatant and willful violation of Regulation X, which has resulted in the loss of her home. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b). Accordingly, Plaintiff is entitled to its actual and statutory together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**Count IV – Failure to Properly Prohibit Foreclosure Sale
Violation of Regulation X, Section 12 C.F.R. § 1024.41(g)**

54. Plaintiff incorporates the allegations in paragraphs 1-31 above into this count for damages.

55. Section 1024.41(g) of Regulation X provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale…." 12 C.F.R. § 1024.41(g).

56. On June 18, 2014, Defendant sent to Plaintiff a letter acknowledging its receipt of the Plaintiff's complete loss mitigation application. See Exhibit "F".

57. On October 7, 2014, an order was entered granting the Plaintiff's Motion to Cancel Sale and rescheduling the foreclosure sale for January 13, 2015. See Exhibit "L".

58. On December 17, 2014, and while the Plaintiff's loss mitigation application was still pending and being reviewed, Defendant's foreclosure counsel proceeded towards an order of sale by submitting to the Clerk of Courts a Notice of Sale which gave public notice of the foreclosure sale of the Property scheduled for January 13, 2015. See Exhibit "M".

59. However, because the Plaintiff's loss mitigation application was still in review, the Defendant was prohibited from pursuing a foreclosure sale of the Property by causing the issuance of the Notice of Sale.

60. On January 23, 2015, Plaintiff's foreclosure counsel filed an Objection and Motion to Vacate Foreclosure Sale on the basis that the sale should be reversed due to the ongoing loss mitigation between the parties. See Exhibit "P".

61. Instead of assisting the Plaintiff in reversing a sale it knew should have never occurred in the first place, Defendant chose to file a motion to strike the Plaintiff's objection to sale so that it would not be required to conduct any further loss mitigation with the Plaintiff.

62. Defendant's actions in pursuing the foreclosure sale of the Plaintiff's Property and then subsequently opposing the Plaintiff's objection to sale violate 12 C.F.R. § 1024.41(g) and its prohibition on foreclosure sales during the review of a loss mitigation application.

63. As a result, Plaintiff incurred actual damages in the form of (1) attorney's fees incurred in the Plaintiff's foreclosure action because of Defendant's pursuit of a foreclosure sale of the Property, including the filing of the objection sale and the hearing on same; (2) costs incurred in the form of time spent, transportation costs, and other expenses incurred during the process of obtaining the Defendant's compliance with Regulation X; (3) the loss of her homestead property; and (4) emotional distress, humiliation, embarrassment, aggravation, and severe anxiety caused by Defendant's blatant and willful violation of Regulation X, which has resulted in the loss of her home. Further, Plaintiff alleges that Defendant's actions or lack of actions with respect to this particular count together with those alleged in the remaining counts in this complaint are tantamount to a case of a pattern or practice of noncompliance with the requirements of the RESPA and Regulation X, allowing for the recovery of statutory damages pursuant to 12 U.S.C. § 2605(f)(b).

64. Accordingly, Plaintiff is entitled to both actual and statutory damages together with prevailing party attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

### `Prayer for Relief

Wherefore, Plaintiff demands final judgment against SPS providing for all of the following:

  a. awarding actual damages that have been and may be proximately caused by SPS's violation of the RESPA and Regulation X;

  b. statutory damages under RESPA for Defendant's pattern and practice of non-compliance;

      c. prevailing party attorneys' fees and costs under 12 U.S.C. § 2605(f);

      d. awarding any further relief available under the law.

### Jury Demand

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

_____
April 26, 2017
Miami, FL

                                                Respectfully submitted,

                                                The Bravo Law Firm, PLLC
Infinity at Brickell
40 SW 13th ST, Suite 902
Miami, FL 33132
Tel: 305.400.9652
Cel: 305.335.0709
jbravo@thebravolawfirm.com

*/s/ Jason Bravo*
Jason Bravo
Florida Bar No. 85743